## LEE MOW LIN et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. April 2, 1918.)

No. 5025.

1. CRIMINAL LAW ⬅1208(3)—SENTENCE.
　　A criminal statute, which fixes the penalty for its violation at imprisonment for "not less than five years," is valid to support a sentence of five years.

2. INTERNAL REVENUE ⬅47—CRIMINAL PROSECUTIONS—INDICTMENT—MANUFACTURE OF SMOKING OPIUM.
　　An indictment for violation of Act Jan. 17, 1914, c. 10, § 1, 38 Stat. 277 (Comp. St. 1916, § 6287a), which provides that no person shall engage in the manufacture of smoking opium "who is not a citizen of the United States and who has not given the bond required by the Commissioner of Internal Revenue," need not aver that defendant has not given a bond, where he is not a citizen, and therefore not entitled to give a bond.

3. INTERNAL REVENUE ⬅2—OPIUM STATUTE—CONSTITUTIONALITY.
　　Such statute is not unconstitutional on the ground that the tax of $300 per pound imposed on smoking opium is prohibitive, as applied to an alien, who cannot be affected by such provision, nor is it unconstitutional because it discriminates between citizens and aliens.

4. CRIMINAL LAW ⬅475—EXPERT EVIDENCE—SMOKING OPIUM.
　　In a prosecution for illegally manufacturing smoking opium, the testimony of an expert chemist and analyst that in his opinion the opium in question, which he had analyzed, was of domestic manufacture and made from crude gum, based on the difference in the morphine content between such opium and the foreign-made article, held properly admitted.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Lee Mow Lin and Lee Bing were convicted of manufacturing opium for smoking purposes, and they bring error. Affirmed.

See, also, 240 Fed. 408, 153 C. C. A. 334.

Chester H. Krum, of St. Louis, Mo., for plaintiffs in error.

Benjamin L. White, Asst. U. S. Atty., of St. Louis, Mo. (Arthur L. Oliver, U. S. Atty., of St. Louis, Mo., on the brief), for the United States.

Before HOOK, CARLAND, and STONE, Circuit Judges.

CARLAND, Circuit Judge. Plaintiffs in error, not being citizens of the United States, complain of a conviction and sentence for manufacturing opium for smoking purposes by preparing opium suitable for smoking purposes from crude gum opium. 38 Stat. 277. Their counsel moved that judgment be arrested on the verdict for the following reasons: (a) That the indictment did not state facts sufficient to constitute an offense; (b) that the statute provides no penalty for its violation; (c) that the statute is void under the Constitution of the United States.

Section 1 of the statute provides that no person who is not a citizen of the United States shall engage in the manufacture of opium for smoking purposes. The indictment sufficiently charges this offense in the language of the statute, and goes further, and charges what plaintiffs in error did to constitute them manufacturers. Section 5 (Comp. St. 1916, § 6287e) provides that for each and every violation of the preceding sections of the law imprisonment for not less than five years shall be imposed. It is contended that, as there is no maximum punishment, the statute leaves the extent of the same to the discretion of the court, and, adopting figures familiar to the present day, counsel urges that one who manufactures a pipeful of smoking opium may be sentenced under the statute to life imprisonment and fined a billion dollars or more, which would not only be a violation of the Eighth Amendment to the Constitution of the United States, prohibiting the imposition of excessive fines and the infliction of cruel and unusual punishments, but the statute would thereby be rendered void for leaving the extent of the punishment entirely to the discretion of the court.

[1] We are of the opinion that the statute fixes a certain punishment of five years, and, as plaintiffs in error did not receive a sentence in excess of five years, they may not raise the question of the validity of a sentence exceeding the minimum penalty fixed by the statute. That the statute is valid, for the purpose of imposing the imprisonment of five years, there seems to be no doubt. Stimpson v. Pond, 2 Curt. 502, Fed. Cas. No. 13,455; Young v. Railway, 227 Mo. 317, 318, 127 S. W. 19; Regina v. Smith, Ontario Reports, 454; In re Placide Richard, 38 Can. Sup. Ct. Rep. 38; State v. Fackler, 91 Wis. 420, 64 N. W. 1029; Ex parte Cain, 20 Okl. 125, 93 Pac. 974; Jackson v. United States, 102 Fed. 473, 42 C. C. A. 452.

[2] It is further claimed that, because section 1 provides that "no person shall engage in such manufacture who is not a citizen of the

United States and who has not given the bond required by the Commissioner of Internal Revenue," the use of the conjunction "and" requires the pleader to allege, and therefore prove, that plaintiffs in error were not only noncitizens, but also had not given a bond. While the word "and" is used, we do not think the bond provision should be applied to persons who are not entitled to give a bond under any circumstances, but should be held to apply to citizens who are required to give a bond, if they shall engage in the manufacture of opium for smoking purposes. Lee Mow Lin et al. v. United States, 240 Fed. 408, 153 C. C. A. 334.

[3] The law is also claimed to be void for the reason that the effect of it is to prohibit under the guise of taxation the manufacture of opium for smoking purposes; the power to prohibit not being within the power of Congress, but of the states. The law on its face is a law imposing a tax for revenue purposes. The tax imposed of $300 per pound on all opium manufactured for smoking purposes may be so high as to defeat the purpose of raising revenue, but the power to tax, as has been said, includes the power to destroy. Plaintiffs in error, however, cannot complain of the law as prohibitive by reason of the tax imposed, as they are not subject to the tax being absolutely prohibited by the law from engaging in the manufacture of opium for smoking purposes. In this situation plaintiffs in error then complain that the law discriminates between citizens and noncitizens, by allowing one to engage in the business on payment of the tax and prohibiting the other from engaging therein on the same condition. In considering this contention we must remember that plaintiffs in error are aliens, and, except as to rights guaranteed by treaty, Congress may without question deny to aliens many rights conferred upon citizens.

[4] We do not think the statute is vulnerable to any attack that plaintiffs in error can make. It is claimed that error was committed in permitting the witness Doran to give his opinion upon matters that were nonexpert. It appeared in evidence that Mr. Doran was a chemist and general analyst, employed by the Commissioner of Internal Revenue, had been so employed for ten years, and was familiar with smoking opium and its component parts and with the manufacture thereof. Over the objection of counsel for plaintiffs in error, he was permitted to testify as to the manner by which Chinese smoking opium could be distinguished from domestic opium, as to the average morphine content of imported smoking opium, and as to the average morphine content of domestic smoking opium; that where gum opium is manufactured into smoking opium the morphine content is increased from 50 to 100 per cent.; that the smoking opium analysis made by the witness in connection with the case on trial was made from domestic gum opium, and not from opium made in a foreign country. We are of the opinion that the witness as an expert was entitled to give his opinion upon the matters stated. While the jurors were the final judges as to whether the plaintiffs in error were manufacturers or not, they were entitled to the expert opinion of the witness as to the difference between foreign smoking opium and domestic smoking opium.

Complaint is made in regard to the charge of the court as to evi-

dence of good reputation on the part of the plaintiffs in error and to the refusal of the court to give a request made by counsel upon that subject. This complaint is disposed of by the fact that the language used by the court on its own motion was not excepted to, nor assigned as error, and, while the request refused was excepted to, it was not assigned as error. Complaint is made as to the refusal of the court to instruct upon the question as to what constituted "manufacture" under the statute. We have examined the requests made, and do not think there was any error in refusing them.

The trial court on its own motion charged the jury, in the language of the statute, that:

"Every person who prepares opium suitable for smoking purposes from crude gum opium, or from any preparation thereof, or from the residue of smoked or partially smoked opium, commonly known as yen shee, or from any mixture of the above, or any of them, shall be regarded as a manufacturer of smoking opium within the meaning of this act."

Counsel wished the court to charge that a single act of preparing opium suitable for smoking would not make a person who prepared the opium a manufacturer, as, for instance, the preparation of smoking opium for a single smoke by the one who prepared it. But the request and contention of counsel was not applicable to the evidence. There was no evidence of a single act of preparation. The evidence tended to show that plaintiffs in error were engaged in the business of manufacturing smoking opium. At the close of all the evidence counsel for plaintiffs in error requested the court to charge the jury to return a verdict of not guilty. We have read the evidence in the record and are satisfied that there was sufficient evidence to go to the jury as to whether the plaintiffs in error were guilty of the crime charged in the second count of the indictment, upon which they were convicted.

The evidence showed that plaintiffs in error were members of the firm of Quong Au Long Company; that on the 28th day of March, 1914, and for several years prior thereto, they had been engaged in business under said firm name at No. 17 South Eighth street, St. Louis, Mo., occupying and controlling a three-story building, and conducting therein a small general store for the sale of Chinese merchandise; that on the day above mentioned, L. G. Nutt, revenue agent in charge at St. Louis, having received information that Lee Mow Lin was manufacturing smoking opium, proceeded with Mr. Fowle and Mr. Langley, of the Revenue Service, and Mr. Bradley, of the Customs Service, to said premises for the purpose of making an investigation. Upon their arrival there they found Lee Mow Lin behind the counter in the store engaged in selling smoking opium to another Chinaman. The officers then proceeded to make an examination of the premises, and in doing so found about four pounds of smoking opium in various containers, about one pound of crude gum opium, and more than two gallons of crude gum opium being soaked or macerated; maceration being the first step in the manufacture of smoking opium. They also found a four-gallon jar, a gallon jar, and a galvanized bucket, all of which had contained crude gum opium in maceration, and gave

evidence of having been emptied of their contents through a window on the third story of said building onto a roof by one Lee Hay, who was jointly indicted with plaintiffs in error, and who was standing by said window with the vessels near him. There was evidence tending to show that these vessels had been emptied recently.

There was also found in the kitchen a cook stove and two large kettles suitable for cooking the solution after maceration, and quite a number of other small tin boxes or tin cans in which smoking opium is put up when sold at retail. There was also found some yen shee, being the ash or residue of smoking opium after the same has been smoked, found on the premises. The evidence showed that smoking opium is manufactured from crude gum opium, or from a mixture of crude gum opium and yen shee, and a low grade from yen shee alone. It showed, also, that the first stage of manufacture is to cut the gum opium in small parcels and soak and macerate it for several hours; that it is then strained, and the solution is cooked to the consistency of thick heavy molasses, and this is smoking opium.

The evidence showed that the plaintiffs in error were not citizens of the United States; that the Quong Au Long Company was engaged in handling and selling smoking opium. A considerable amount of the manufactured product was found, and also a quantity of crude gum opium, most of which was already in the first stage of the manufacture of smoking opium. It showed implements and utensils suitable for manufacture of smoking opium were at the store. It showed that all of the smoking opium found on hand, with the exception of one small can, which was unopened and had been imported, contained a morphine content ranging from 16.5 per cent. to 19.45 per cent. It showed that imported smoking opium is of a much smaller morphine content than the smoking opium manufactured in this country; that the smoking opium found on the premises mentioned with the exception of the small can which was unopened was of domestic manufacture.

We presume it would be rare that parties could be found in the actual manufacture of smoking opium; therefore we are of the opinion there was sufficient evidence introduced from which the jury would be authorized to find that the plaintiffs in error were guilty of the charge made against them.

There being no reversible error in the record, the judgment is affirmed.